## COPY

AO 442   (Rev. 10/03) Warrant for Arrest

# UNITED STATES DISTRICT COURT

| Northern | District of | Texas |
|---|---|---|

UNITED STATES OF AMERICA

V.

Jeffrey Lynn Daniels
aka "JDT" and "Dialtone"

To: The United States Marshal
and any Authorized United States Officer

**WARRANT FOR ARREST**

Case Number: 3-11-cr-152-L (02)

# MAG 11 -150

YOU ARE HEREBY COMMANDED to arrest   Jeffrey Lynn Daniels
_____
Name

and bring him or her forthwith to the nearest magistrate judge to answer a(n)

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Order of court  ☐ Probation Violation Petiton  ☐ Supervised Release Violation Petition  ☐ Violation Notice

charging him or her (brief description of offense)

Conspiracy to Use Access Devices to Modify Telecommunications Instruments and to Make Unauthorized Access to PRotected Telecommunications Computers; Obstruction : Destruction of Evidence; Obstruction: Concealment of Evidence;

in violation of Title  18   United States Code, Section(s)   371(1029(a)(9); 1030(a)(5)(A)(ii) and B(iv), 1030(a)(2)(A) and 875(d); 1512(c)(1),

| Karen Mitchell, U.S. District Court Clerk | _Karen Mitchell_ |  |
|---|---|---|
| Name and Title of Issuing Officer | Signature of Issuing Officer | |

| Magistrate Judge Irma C. Ramirez | May 26, 2011 | Dallas, TX |
|---|---|---|
| | Date | Location |

By: /s/J. Baggett

---

| **RETURN** |
|---|
| This warrant was received and executed with the arrest of the above-named defendant at |

715 Hale Road, Ashville, AL 35953

| DATE RECEIVED 5/26/11 | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE OF ARREST 5/27/11 | Steven P. Ferguson, Special Agent | |



CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

'11 MAY 25 PM 4: 36

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | |
| | § | NO. |
| JASON ALLEN NEFF (1) | § | **3 - 1 1 C R - 1 5 2 - L** |
| also known as "CrazyJ" | § | |
| JEFFREY LYNN DANIELS (2) | § | **MAG 1 1 -150** |
| also known as "JDT" and "Dialtone" | § | |

### INDICTMENT

The Grand Jury charges:

### Introduction

At all times material to the Indictment:

1.    A telephone party line was a type of telephone conference which members

accessed by calling a local or toll free telephone number. The ostensible purpose of the

party line was to provide a social network for individuals, many of whom were located in

different states, to visit and socialize. The party line permitted a limited number of

members to visit in an open conference "room" or to visit in smaller numbers in separate

private "rooms" if they elected to do so, similar to Internet Relay Chat rooms, but on the

telephone.

2.    A "phone phreaker" was an individual who was highly-skilled at manipulating

telephone system networks and "socially engineering" telephone company employees.

The phone phreakers made unauthorized access to telecommunications systems including computer servers for the purpose of (1) manipulating and disrupting the telephone system to obtain 'free' services for themselves and others; (2) harassing individual telephone customers; (3) discontinuing services for individual customers without authorization; (4) listening in on customers' telephone conversations without authorization; and (5) "spoofing" Caller I.D. or falsifying Caller I.D.

3.      To "socially engineer" meant to impersonate someone, i.e. a telephone system employee or other person, in order to gain the cooperation of that person to obtain information or unauthorized access to telephone systems.

4.      A "swatting 911 call" was a false 911 call made to police in which a false report of a violent crime was made in order to elicit a police Special Weapons and Tactics squad (SWAT) response to the physical address of a targeted individual, his or her family members, or place of employment. A variation of the "swatting" activity included making false reports to child protective services, hospitals, landlords, or employers to adversely affect a targeted chat/party line member, his or her family members, and others.

5.      "911" was a telephone service as defined by The Communications Act of 1934 and federal regulation. The 911 service was provided by telephone companies AT&T, Verizon, and other telecommunication providers, to facilitate emergency calls to police, and a fee for the service was charged to individual subscribers.

6.      To "spoof" meant the act of falsifying Caller I.D. information to conceal the true

Caller I.D. of a telephone call.

7.      A "spoofcard" was a type of commercial account accessible either online or by telephone which provides an access device, i.e. a number or computer code, which enables the caller to elect a number of services including the concealment of the caller's true Caller I.D. by substituting another Caller I.D., changing the caller's voice to another gender, and/or recording the call on the company's servers.

8.      Defendant **Jason Allen Neff** was known to others by his name and by several aliases to include "CrazyJ," "Cl0pz," "Cl0pz420," and other variations of "Cl0pz."

9.      Defendant **Jeffrey Lynn Daniels** was known to others by his name and by several aliases to include "JDT" and "Dial Tone."

10.     Defendants **Jason Allen Neff** and **Jeffrey Lynn Daniels** operated and managed a web site known as Partylinegaga.net which reported on, gathered information on, coordinated the activities of, and recorded chat/party line activity, including swatting and swatting related events.

11.     Defendants **Jason Allen Neff** and **Jeffrey Lynn Daniels** operated and managed the chat/party lines known as Yakkee, Senturachat.net and Thelegendsystem.com.

COUNT ONE
Conspiracy to Use Access Devices to Modify Telecommunications
Instruments and to Make Unauthorized Access to
Protected Telecommunications Computers
(Violation of 18 U.S.C. §371 (18 U.S.C. §§1029(a)(9);
1030(a)(5)(A)(ii) and B(iv), 1030(a)(2)(A), and 875(d)).

## Objects of the Conspiracy

1.      From at least in or about September 2003 and continuing through at least in or

about June 2009, in the Dallas and Fort Worth Divisions of the Northern District of Texas

and elsewhere, defendants **Jason Allen Neff** and **Jeffrey Lynn Daniels** did unlawfully,

willfully, and knowingly combine, conspire, confederate and agree with each other, with

the previously charged coconspirators Guadalupe Martinez, Stuart Rosoff, Jason

Trowbridge, Chad Ward, Matthew Weigman, Angela Roberson, and with other

individuals known and unknown to the Grand Jury, to commit offenses against the United

States, to wit: (1) to knowingly use, traffic in, possess, and control hardware and

software, knowing it had been configured to modify telecommunication identifying

information associated with and contained in a telecommunications instrument so that

such instrument could be used to obtain telecommunications services without

authorization in violation of 18 U.S.C. §1029(a)(9); (2) to intentionally access a telephone

system protected computer, as that term is defined at 18 U.S.C. §1030(e)(2)(B), without

authorization, and as a result of such conduct, recklessly cause damage and a threat to

public health and safety in violation of 18 U.S.C. §1030(a)(5)(A)(ii) and B(iv); (3) to

exceed authorized access to a computer and obtain information contained in a file of a consumer reporting agency on a consumer and information from a protected computer through an interstate communication in violation of 18 U.S.C. §1030(a)(2)(A); and (4) to transmit in interstate commerce communications containing threats to injure the property or reputation of a person and threats to falsely accuse persons of criminal conduct in violation of 18 U.S.C. §875(d).

## Manner and Means

2.    It was part of the conspiracy that:

a.    Defendants **Jeffrey Lynn Daniels**; **Jason Allen Neff**; the previously charged coconspirators Guadalupe Martinez, Stuart Rosoff, Jason Trowbridge, Chad Ward, Matthew Weigman, Angela Roberson; and others known and unknown to the Grand Jury, were members of and participated in telephone chat/party lines in which they made or facilitated the making of false 911 calls ("swatting" 911 calls) by concealing the true caller identification information (Caller ID) and making false reports of violent crimes designed to elicit a police Special Weapons and Tactics squad (SWAT) response to the addresses of targeted members of the telephone chat/party line, their family members, and associated persons.

b.    Defendant **Jason Allen Neff** and coconspirators Guadalupe Martinez, Stuart Rosoff, and Matthew Weigman were "phone phreakers." They used "social engineering" or subterfuge to acquire sensitive information from telephone service

providers by impersonating telephone company employees. The sensitive information obtained enabled them to exploit telephone network computer servers by: (1) obtaining subscriber information; (2) altering billing information and telephone service plans; (3) redirecting, changing service charges, and discontinuing telephone service; (4) monitoring or tapping telephone lines; and (5) obtaining telephone company security policies and procedures.

    c.    Coconspirator Stuart Rosoff (1) directed and instructed coconspirators on the technical aspects of "spoofing" Caller I.D. to make "swatting" 911 calls; (2) targeted individuals for harassing, extorting, and "swatting" 911 calls; (3) possessed and trafficked in "spoof" cards to conceal Caller I.D.; (4) made unauthorized access to telecommunication facilities in order to obtain personal identification information, toll records, call histories and billing information of targeted chat/party line members for "swatting" 911 calls; (5) participated in harassing, extorting, and "swatting" 911 calls; and (6) extorted money and services from targeted chat/party line members.

    d.    Coconspirator Chad Ward (1) purchased and trafficked in commercially available "spoof" cards to "spoof" Caller I.D. to make "swatting" 911 calls; (2) offered to provide and provided financing to coconspirators to make "swatting" 911 calls; (3) targeted individuals for harassing, extorting, and "swatting" 911 calls; and (4) participated in harassing, extorting, and "swatting" 911 calls with coconspirators.

    e.    Coconspirator Jason Trowbridge (1) exceeded authorized access to

Lexis/Nexis, a commercial database, in order to obtain personal identification information, i.e. telephone numbers, addresses and names of targeted chat/party line members and their family members for use in "swatting" 911 calls; (2) participated in harassing, extorting, and "swatting" 911 calls; (3) targeted individuals for harassing, extorting, and "swatting" 911 calls; and (4) purchased commercially available "spoof" cards for use in making harassing, extorting, and "swatting" 911 calls.

     f.     Coconspirator Angela Roberson (1) targeted individuals for harassing, extorting, and "swatting" 911 calls, and (2) provided others with personal identification information, i.e. telephone numbers, addresses and names of targeted chat/party line members and their family members for use in "swatting" 911 calls.

     g.     Coconspirator Guadalupe Martinez (1) targeted individuals for harassing, extorting, and "swatting" 911 calls; (2) used commercially available "spoof" cards to "spoof" Caller I.D. when making "swatting" 911 calls; and (3) participated in "swatting" 911 calls made by himself and others.

     h.     Defendants **Jeffrey Lynn Daniels** and **Jason Allen Neff** maintained operated, and obtained teleconferencing services used by themselves and by other coconspirators to coordinate and pay for their activities. Among these services, **Jason Allen Neff** ran a teleconferencing service known as Yakkee and **Jeffrey Lynn Daniels** ran the teleconferencing services known as Sentura Chat and the Legend system. Both of these services offered party lines to chat/party line members. In addition, **Jason Allen**

Neff and others used their skills at social engineering to arrange for teleconferences to be billed to third parties without the knowledge or consent of the third parties.

    i.    Defendant **Jeffrey Lynn Daniels** (1) provided money to coconspirator Matthew Weigman and others for operating his party line and funded Weigman's activities; (2) directed Weigman to forward telephones, turn telephone service on, and obtain telephone service without paying for it; (3) provided money and other things of value such as obtaining books and reading them aloud for Weigman in exchange for Weigman threatening or harassing individuals identified by **Jeffrey Lynn Daniels** on **Jeffrey Lynn Daniels'** behalf.

### Overt Acts

3.    In furtherance of the conspiracy and to achieve its objects, the defendants **Jeffrey Lynn Daniels and Jason Allen Neff**, and the previously charged coconspirators Guadalupe Martinez, Stuart Rosoff, Jason Trowbridge, Chad Ward, Matthew Weigman, and Angela Roberson, committed and caused to be committed, among others, the following overt acts in the Northern District of Texas and elsewhere:

    a.    Beginning on or about September 2, 2003, and continuing through on or about November 15, 2003, defendant **Jason Allen Neff**, coconspirators Stuart Rosoff and Jason Trowbridge, and other persons known and unknown to the Grand Jury made at least twelve "swatting" 911 calls to the Victoria County Sheriff, Victoria, Texas concerning SB, and caused a police response to a residence in Victoria, Texas.

b.     On or about September 17, 2003, defendant **Jason Allen Neff**
coconspirators Stuart Rosoff and Jason Trowbridge, and other persons known and
unknown to the Grand Jury made a "swatting" 911 call with "spoofed" Caller I.D. to the
Hartford County Emergency Center (HCEC) in Hartford County, Maryland, concerning
SB. The HCEC notified Bel Air Maryland Police Department of the emergency call,
which caused a police response to a residence in Bel Air, Maryland.

c.     In or about January 2004, at the request of chat/party line member JS,
defendant **Jason Allen Neff** obtained personal identification information on another
chat/party line member TM of Mills, Wyoming. **Jason Allen Neff** and JS planned an
emergency 911 call for the Mills Wyoming Police Department. On or about January 19,
2004, **Jason Allen Neff** directed MS to place the "swatting" 911 call to the Mills Police
Department. The "swatting" 911 call caused a SWAT response to the residence of TM in
Mills, Wyoming.

d.     In or about January 2004, in a telephone chat/party line room, defendant
**Jason Allen Neff** threatened (1) to expose in the chat/party line room the social security
numbers of a chat/party line member JS and JS's family members residing in Nampa,
Idaho, and (2) to turn off JS's telephone service.

e.     In or about January 2004, defendant **Jason Allen Neff** placed a "swatting"
911 call to the Nampa Idaho Police Department, and caused an emergency response to
JS's residence. On or about February 3, 2004, **Jason Allen Neff** caused another person to

Indictment Jason Allen Neff and Jeffrey Lynn Daniels - Page 9

place a "swatting" 911 call to the Nampa Idaho Police Department reporting a suicide at JS's residence, resulting in an emergency response to JS's residence. While the police were at JS's residence, **Jason Allen Neff** called the residence and spoke with the responding officer. During this conversation, **Jason Allen Neff** threatened to shoot the officer and slit JS's mother's throat. Following this call, **Jason Allen Neff** contacted JS's telephone service provider and through social engineering terminated the telephone service used by JS.

  f. On or about December 7, 2005, defendant **Jason Allen Neff**, coconspirator Weigman, and others known and unknown to the grand jury participated in a "swatting" 911 call to the North Las Vegas Nevada Police Department, using a "spoofed" Caller I.D. for a telephone service company located in Dallas, Texas, in the Northern District of Texas, in which the caller claimed to be holding a police officer doused in gasoline as a hostage. The caller demanded $100,000 in 15 minutes and threatened to set fire to the police officer. The "swatting" 911 call caused a SWAT response to the residence in North Las Vegas, Nevada.

  g. On or about May 24, 2006, defendant **Jason Allen Neff** obtained personal identification information about a contestant on American Idol, including the contestant's telephone number, in order to share them with coconspirator Angela Roberson.

  h. On or about May 28, 2006, defendant **Jason Allen Neff** obtained voter information including addresses of a chat/party line member and his or her family and

provided these details to coconspirator Angela Roberson by instant message in furtherance of swatting activity.

i.     On or about May 31, 2006, defendant **Jason Allen Neff** obtained personal identification information on a number of chat/party line members targeted by coconspirator Stuart Rosoff and shared them with coconspirator Angela Roberson by instant message.

j.     In or about June 2006, coconspirator Jason Trowbridge made unauthorized access to a commercial database for the purpose of obtaining the address of a targeted telephone chat/party line member referred to herein as SP, and SP's parents, in order to provide that information to Guadalupe Martinez who initiated a "swatting" 911 call, directing a SWAT response to SP's parents address in Alvarado, Texas.

k.     On or about June 10, 2006, defendant **Jason Allen Neff** obtained unauthorized access to SBC records and obtained the call detail records for a chat/party line member. Neff then provided some of these details to coconspirator Angela Roberson by instant message. In addition, **Jason Allen Neff** told Roberson that he was able to obtain the number by calling into SBC with false caller ID and thereby deceiving the SBC personnel.

l.     On or about June 12, 2006, coconspirator Guadalupe Martinez called the 911 emergency services for the City of Cleburne, Texas, and identified himself as SP's father. Guadalupe Martinez stated that he had shot and killed members of SP's family,

that he was holding hostages, that he was using hallucinogenic drugs, that he was armed with an AK47, and he demanded $50K and transportation across the U.S. border to Mexico or he would kill the remaining hostages. Guadalupe Martinez placed the call from outside the state of Texas using a voice over internet protocol (VoIP) Skype telephone and a spoof card provided to him by coconspirator Chad Ward to conceal his true identity, in order to make it appear to emergency services that the call was a true emergency from the address associated with the telephone identification number that had been spoofed. The "swatting" 911 call caused a SWAT response to the residence in Cleburne, Texas.

   m.   Between spring 2006 and through at least October 2006, coconspirator Chad Ward paid defendant **Jeffrey Lynn Daniels** in excess of $15,000 to set up, operate, and maintain a telephone chat/party conference line for Ward.

   n.   In or about July 2006, coconspirator Jason Trowbridge made unauthorized access to the Lexis/Nexis database for the purpose of obtaining personal information on a targeted individual who lived in Alabama, and provided the information to coconspirator Stuart Rosoff.

   o.   In or about September 2006, coconspirator Jason Trowbridge asked coconspirator Guadalupe Martinez to "swat" coconspirator Chad Ward, and provided Guadalupe Martinez with Chad Ward's full name, address, and telephone number. In payment for swatting Chad Ward, Jason Trowbridge provided Guadalupe Martinez with

the address, telephone number and full name of another telephone chat/party line participant. The "swatting" 911 call was made by Guadalupe Martinez from the telephone chat/party line and listened to by Jason Trowbridge , Stuart Rosoff, and other persons.

    p.    In or about September 2006, coconspirator Chad Ward offered coconspirator Guadalupe Martinez $500 to "swat" Jason Trowbridge.

    q.    In or about October 2006, in a telephone chat/party line room, defendant **Jason Allen Neff** participated in threatening SP, a resident of Tarrant County, Texas.

    r.    On or about October 1, 2006, in a telephone chat/party line room, coconspirator Chad Ward offered $300 to anyone who would "swat" SP. Coconspirator Guadalupe Martinez agreed to make the "swatting" 911 call, and coconspirators Chad Ward and Jason Trowbridge listened in on the call. Coconspirator Stuart Rosoff provided Guadalupe Martinez with the address which Stuart Rosoff had obtained from the unauthorized monitoring of SP's calling information through an "in-bounce trace" on a telephone systems server.

    s.    On or about October 1, 2006, coconspirator Guadalupe Martinez called the 911 emergency services for the City of Fort Worth, Texas, and identified himself as SP's father. Guadalupe Martinez stated that he had shot and killed members of SP's family, that he was holding hostages, that he was using hallucinogenic drugs, that he was armed, and threatened to kill the remaining hostages. Guadalupe Martinez placed the call from

Indictment Jason Allen Neff and Jeffrey Lynn Daniels - Page 13

outside the state of Texas using a voice over internet protocol (VoIP) telephone and a spoof card to conceal his true identity, in order to make it appear to emergency services that the call was a true emergency from the address associated with the telephone identification number that had been spoofed. The "swatting" 911 call caused a SWAT response to the residence in Fort Worth, Texas.

t.     On or about October 6, 2006, coconspirator Matthew Weigman made an unauthorized access to the Verizon Network Operations Center at the Verizon Provisioning Center located at Irving, Texas to obtain individual customers' personal identification information for use in "spoofing" Caller I.D. by the coconspirators, and to obtain individual customers' personal identification information for targeting chat/party line members and their family members.

u.     On or about October 8, 2006, coconspirator Matthew Weigman made an unauthorized access to the computer equipment of CTS Telecommunications, a subdivision of AT&T, at its facility in Grand Prairie, Texas, to obtain information for use in "spoofing" Caller I.D. and to obtain individual customers' personal identification information for targeting chat/party line members and their family members.

v.     In or about February 2007, defendant **Jason Allen Neff** threatened to physically injure SP, saying "snitches get stitches," in retaliation for SP providing information to a law enforcement officer related to the investigation and the prosecution in the Northern District of Texas, of *United States v. Stuart Rosoff, et al*, 3:07-CR-196-B.

w.    On or about January 15, 2008, defendant **Jeffrey Lynn Daniels** sent an instant message to MB admitting to his participation in making "swatting" 911 calls.

x.    On or about April 4, 2008, defendant **Jeffrey Lynn Daniels** telephoned MB and threatened MB with physical harm and threatened to "swat" MB.

In violation of 18 U.S.C. §371 (18 U.S.C. §§1029(a)(9); 1030(a)(5)(A)(ii) and B(iv), 1030(a)(2)(A), and 875(d))

COUNT TWO
Obstruction: Retaliation
(18 U.S.C. §1513(b)(2))

The Grand Jury realleges and incorporates the Introduction to the Indictment and the Overt Acts in Count One.

In or about February 2007, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant **Jason Allen Neff** did knowingly threaten to physically injure SP, saying "snitches get stitches," with the intent to retaliate against SP for information given by SP to a law enforcement officer relating to the criminal investigation by the Federal Bureau of Investigation, and the prosecution in the Northern District of Texas, of *United States v. Stuart Rosoff, et al,* 3:07-CR-196-B.

In violation of 18 U.S.C. §1513(b)(2).

## COUNT THREE
Obstruction:  Destruction of Evidence
(18 U.S.C. §1512(c)(1))

The Grand Jury realleges and incorporates the Introduction to the Indictment and the Overt Acts in Count One.

In or about June 2007, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant **Jeffrey Lynn Daniels**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and corruptly destroy and conceal and attempt to destroy and conceal records, documents, and other objects, namely electronic data on computers and other data storage devices and a cellular telephone belonging to Chad Ward, in that **Daniels** removed and caused to be removed items from Chad Ward's residence in New York, with the intent to impair the integrity and availability for use of the items in an official proceeding, that being the criminal investigation by the Federal Bureau of Investigation, and the prosecution in the Northern District of Texas, of *United States v. Stuart Rosoff, et al*, 3:07-CR-196-B.

In violation of 18 U.S.C. §1512(c)(1).

<u>COUNT FOUR</u>
Obstruction: Concealment of Evidence
(18 U.S.C. §1512(c)(1))

The Grand Jury realleges and incorporates the Introduction to the Indictment and the Overt Acts in Count One.

In or about July 2007, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant **Jeffrey Lynn Daniels**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and corruptly conceal and attempt to conceal records, documents, and other objects, namely electronic data on computers and other data storage devices, in that **Daniels** moved a computer hosting partylinegaga.net from the premises subject to a search warrant at **Daniels'** residence in Oneonta, Alabama to the office of JRB in Oneonta, Alabama, with the intent to impair the availability of the computer and the data therein for use in an official proceeding, that being the criminal investigation by the Dallas Office of the Federal Bureau of Investigation, and the prosecution in the Northern District of Texas, of *United States v. Stuart Rosoff, et al*, 3:07-CR-196-B.

In violation of 18 U.S.C. §1512(c)(1).

COUNT FIVE
Obstruction: Retaliation
(18 U.S.C. §1513(b)(2))

The Grand Jury realleges and incorporates the Introduction to the Indictment and the Overt Acts in Count One.

In or about June 2009, in the Dallas Division of the Northern District of Texas and elsewhere, the defendant **Jason Allen Neff**, aided and abetted by others known to the Grand Jury, did knowingly threaten to "swat" DS, by causing a false 911 call to be made to elicit an emergency response to the residence of DS, which would cause bodily injury to DS and damage tangible property belonging to DS, with the intent to retaliate against DS for information given by DS to a law enforcement officer relating to the criminal investigation by the Federal Bureau of Investigation, and the prosecution in the Northern District of Texas, of *United States v. Matthew Weigman*, 3:08-CR-171-M.

In violation of 18 U.S.C. §1513(b)(2).

A TRUE BILL:

_____
FOREPERSON

JAMES T. JACKS
UNITED STATES ATTORNEY

CANDINA S. HEATH
Assistant United States Attorney
State of Texas Bar No. 09347450
1100 Commerce Street, 3rd Floor
Dallas, Texas 75242
P: 214.659.8600
F: 214.659.8805
candina.heath@usdoj.gov

Indictment Jason Allen Neff and Jeffrey Lynn Daniels - Page 20